UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

CAMERON M.,

    Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

    Defendant.

Case No. C19-1607-MLP

ORDER

## I.    INTRODUCTION

Plaintiff seeks review of the partial denial of his application for Supplemental Security Income. Plaintiff contends the administrative law judge ("ALJ") erred in assessing the medical evidence and in finding evidence of medical improvement. (Dkt. # 10 at 1.) As discussed below, the Court REVERSES the Commissioner's final decision and REMANDS the matter for further administrative proceedings under sentence four of 42 U.S.C. § 405(g).

## II.    BACKGROUND

Plaintiff was born in 1991, has a GED, and at the time of the administrative hearing was working as a part-time janitor and enrolled in community college full-time. AR at 46-47, 50-51. In January 2016, Plaintiff applied for benefits, alleging disability as of June 21, 2008. AR at 243-49. Plaintiff's application was denied initially and on reconsideration, and Plaintiff requested a

ORDER - 1

hearing. *Id.* at 168-76, 180-89. After the ALJ conducted a hearing in February 2018 (*id.* at 38-90), the ALJ issued a decision finding Plaintiff not disabled. *Id.* at 17-32.

Utilizing the five-step disability evaluation process,[1] the ALJ found:

**Step one:** Plaintiff worked after the date he became disabled (January 20, 2016), but this work did not constitute substantial gainful activity.

**Step two:** During the time that Plaintiff was disabled (January 20, 2016-March 8, 2017), as well as the time period since Plaintiff's disability ended, Plaintiff had the following severe impairments: anxiety disorder, schizophrenia/psychotic disorder, attention-deficit/hyperactivity disorder, and cycling mood disorder.

**Step three:** During the time that Plaintiff was disabled, as well as the time period since Plaintiff's disability ended, Plaintiff's impairments have not met or equaled the requirements of a listed impairment.[2]

**Residual Functional Capacity ("RFC"):** During the time that Plaintiff was disabled, he had the RFC to perform a full range of work at all exertional levels, with the following non-exertional limitations: he could perform simple, routine, repetitive tasks with reasonable concentration, persistence, and pace. He could attend work within customary tolerances, work within a routine, and complete a normal workday and workweek. He could have only brief and superficial contact with small groups of co-workers, but no contact with large groups. He could not interact with the general public, although he could have worked in the proximity of the general public. He would have been off-task for 20% of the workday and experienced two unscheduled absences each month.

Beginning March 9, 2017, Plaintiff has had the same RFC listed in the previous paragraph, but would not be off-task for 20% of the workday and would not experience two unscheduled absences per month.

**Step four:** Plaintiff has no past relevant work.

**Step five:** During the time that Plaintiff was disabled, there were no jobs that exist in significant numbers in the national economy that Plaintiff could have performed. Beginning March 9, 2017, Plaintiff could have performed jobs that exist in significant numbers in the national economy, and thus he was not disabled on that date or thereafter.

AR at 17-32.

As the Appeals Council denied Plaintiff's request for review, the ALJ's decision is the

---

[1] 20 C.F.R. § 416.920.
[2] 20 C.F.R. Part 404, Subpart P, Appendix 1.

ORDER - 2

Commissioner's final decision. AR at 1-6. Plaintiff appealed the final decision of the Commissioner to this Court. (Dkt. # 3.)

### III. LEGAL STANDARDS

Under 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits when the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 (9th Cir. 2005). As a general principle, an ALJ's error may be deemed harmless where it is "inconsequential to the ultimate nondisability determination." *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012) (cited sources omitted). The Court looks to "the record as a whole to determine whether the error alters the outcome of the case." *Id*.

"Substantial evidence" is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving any other ambiguities that might exist. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). While the Court is required to examine the record as a whole, it may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). When the evidence is susceptible to more than one rational interpretation, it is the Commissioner's conclusion that must be upheld. *Id.*

### IV. DISCUSSION

**A. The ALJ Did Not Harmfully Err in Assessing the Medical Evidence**

*1. Any Step-Two Error is Harmless*

Plaintiff argues that the ALJ erred in failing to include obsessive compulsive disorder

("OCD") as a severe impairment at step two. As noted by Plaintiff, his treating physician, Harry Herdman, M.D., listed OCD in treatment notes. *See* AR at 541, 546, 547-58, 556, 560.

At step two, a claimant must make a threshold showing that her medically determinable impairments significantly limit her ability to perform basic work activities. *See Bowen v. Yuckert*, 482 U.S. 137, 145 (1987); 20 C.F.R. §§ 404.1520(c), 416.920(c). "Basic work activities" refers to "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. §§ 404.1522(b), 416.922(b). "An impairment or combination of impairments can be found 'not severe' only if the evidence establishes a slight abnormality that has 'no more than a minimal effect on an individual's ability to work.'" *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996) (quoting Social Security Ruling 85-28). "[T]he step two inquiry is a de minimis screening device to dispose of groundless claims." *Smolen*, 80 F.3d at 1290. An ALJ is also required to consider the "combined effect" of an individual's impairments in considering severity. *Id*. A diagnosis alone is not sufficient to establish a severe impairment: instead, a claimant must show his medically determinable impairments are severe. 20 C.F.R. §§ 404.1521, 416.921.

Plaintiff is correct that his treatment notes contain a diagnosis of OCD, as described above. None of those treatment notes mention any particular limitations caused by OCD, however, which renders harmless any error in the failure to list OCD as a severe impairment at step two. *See Buck v. Berryhill*, 869 F.3d 1040, 1048-49 (9th Cir. 2017). The ALJ considered all of the limitations discussed by Dr. Herdman (which were not delineated between Plaintiff's different diagnoses), which indicates that the ALJ fully addressed any limitations that could have been attributed to OCD. *See* AR at 30 (discussing Dr. Herdman's January 2018 form opinion (*id*. at 533-37)). For these reasons, the Court finds that any error at step two is harmless.

//

### 2. *The ALJ Did Not Err in Discounting Dr. Herdman's Opinion*

Plaintiff goes on to argue that the ALJ erred in discounting Dr. Herdman's January 2018 form opinion that rated Plaintiff's various mental limitations. Where contradicted, a treating or examining doctor's opinion may not be rejected without "'specific and legitimate reasons' supported by substantial evidence in the record for so doing." *Lester v. Chater*, 81 F.3d 821, 830-31 (9th Cir. 1996) (quoting *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983)).

In this case, the ALJ summarized Dr. Herdman's opinion and discounted it as inconsistent with the doctor's own treatment notes, which document mostly normal mental status examination findings, as well as the findings of other providers. AR at 30. The ALJ also noted that Dr. Herdman did not specialize in mental health, and his opinion does not reference specific clinical findings that support his conclusions. *Id*.

Indeed, the form opinion that Dr. Herdman completed ask him to identify the clinical findings that support his conclusions, but Dr. Herdman either responded with vague, conclusory statements, or left whole sections blank. AR at 534, 535, 537. The ALJ did not err in discounting Dr. Herdman's opinion for these reasons. *See Thomas*, 278 F.3d at 957 ("The ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings."). Furthermore, the ALJ cited treatment notes and objective examinations showing many normal findings. AR at 30 (citing *id*. at 490, 501, 509, 511, 513, 518-19, 540-41, 545, 548-49). Plaintiff acknowledges that his psychosis symptoms improved after March 2017 (dkt. # 10 at 10) but argues that the medical evidence shows that he still had some abnormal findings, such as evidence of anxiety and low insight (dkt. # 10 at 9-10). This argument does not show error in the ALJ's decision, however, because the ALJ's RFC assessment contains many mental limitations. *See* AR at 28. The ALJ

did not cite the mental status examinations as evidence that Plaintiff had no mental limitations whatsoever, but as evidence that Plaintiff's limitations were not as severe as those described by Dr. Herdman. *Id*. at 30. Plaintiff has not persuaded the Court that the ALJ impermissibly cherry-picked from the record to find that Dr. Herdman's opinion was inconsistent with multiple mental status examinations as well as his own treatment notes.

### 3. *The ALJ Did Not Err in Discounting the Opinion of Ellen Walker, Ph.D.*

In a footnote, Plaintiff argues that the ALJ erred in discounting the opinion of Dr. Walker, a DSHS examining psychologist. (Dkt. # 10 at 6 n.1.) Dr. Walker examined Plaintiff in November 2017 and completed a DSHS form opinion describing his symptoms and limitations. AR at 487-90. The ALJ summarized Dr. Walker's conclusions and explained that he discounted her opinion because she did not review records before rendering her opinion (*id.* at 487) and thus was unaware of records showing Plaintiff's improvement with medication and many normal mental status examination findings. *Id*. at 30-31.

Plaintiff argues that the ALJ's reasoning is erroneous because Dr. Walker was aware of Plaintiff's improvement with medication (see AR at 488 (noting improvement in psychosis symptoms with medication)). Dr. Walker was indeed aware of improvement as to Plaintiff's psychosis, but the ALJ cited evidence that Plaintiff's mental functioning overall improved with treatment and medication. *See id*. at 501, 509, 511, 513, 518-19, 540-41, 545, 548-49. This improvement and indications of normal functioning are reasonably inconsistent with Dr. Walker's conclusions, and therefore the ALJ did not err in discounting Dr. Walker's opinion as inconsistent with the longitudinal record. *See Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008) (not improper to reject an opinion presenting inconsistencies between the opinion and the medical record).

**B.	The ALJ Did Not Err in Finding that Medical Improvement Occurred on March 9, 2017**

　　*1.	Medical Evidence*

The ALJ found that on March 9, 2017, Plaintiff's disability ended, in light of his improvement with medication. AR at 28. Plaintiff concedes that his psychotic symptoms did improve with medication but contends that his condition did not "globally" improve such that his disability ended. (Dkt. # 10 at 7-8.) Plaintiff cites treatment notes post-dating March 9, 2017, which he contends continue to describe symptoms of low insight and anxiety. (Dkt. # 10 at 7-8 (citing AR at 545, 548-49).) Both of those records, however, are equivocal as to anxiety: Dr. Herdman indicated that Plaintiff had both "more anxiety" but also "[a]ppears less anxious[.]" AR at 545, 548. In one of those notes, dated March 9, 2017, Dr. Herdman concluded his appointment notes with a finding that Plaintiff appeared "stable and improved" and did not need to check in for five months. *Id.* at 549. These records support the ALJ's assessment of the evidence and do not evince cherry-picking. The ALJ also cited other evidence as well that shows mostly normal mental status examination findings and/or reports of normal functioning. *See, e.g.*, *id.* at 501, 509, 511, 513, 518-19, 540-41. The Court finds that the ALJ's finding of medical improvement is based on a reasonable reading of substantial evidence in the record and is therefore affirmed.

　　*2.	Plaintiff's Allegations*

Plaintiff goes on to argue that the ALJ erred in discounting his subjective testimony. An ALJ's reasons to discount a claimant's subjective allegations must be clear and convincing. *See Burrell v. Colvin*, 775 F.3d 1133, 1136-37 (9th Cir. 2014). In this case, the ALJ summarized Plaintiff's allegations of limitations in his disability application as well as at the administrative hearing and found that those allegations are inconsistent with the objective medical evidence from March 9, 2017, forward. AR at 29. The ALJ also cited evidence that Plaintiff's activities

suggested an ability to work as of March 9, 2017, including his ability to work part-time, apply for jobs, and attend community college. *Id*.

Plaintiff again acknowledges that his psychotic symptoms improved during the time that the ALJ found him not disabled (dkt. # 10 at 12) but argues that his symptoms did not improve overall. As discussed above, the ALJ cited evidence showing mostly normal mental status examination findings, which corroborate the ALJ's finding that the objective record fails to corroborate Plaintiff's allegation of disabling mental symptoms as of March 9, 2017. This is a clear and convincing reason to discount Plaintiff's testimony, in conjunction with the ALJ's other reasoning regarding activities. *See Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001) ("While subjective pain testimony cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence, the medical evidence is still a relevant factor in determining the severity of the claimant's pain and its disabling effects.")

Plaintiff goes on to argue that he engaged in some of the activities described by the ALJ during the time that he was found disabled, and therefore contends that these activities do not demonstrate medical improvement. (Dkt. # 10 at 12-13.) Even if that argument is persuasive to some degree, the ALJ went on to note that Plaintiff applied for jobs and attended community college post-March 9, 2017. AR at 29 (citing *id*. at 492-97). Although Plaintiff contends that the ALJ erred in failing to explain precisely why those activities contradict his allegations (dkt. # 10 at 14), the Court draws its own inferences to find an inconsistency between Plaintiff's alleged inability to work and his demonstrated ability to take a full load of classes (AR at 51-52), as well as his work with vocational services to apply for jobs, while expressing concern about how such jobs could result in a loss of benefits and how he would prefer to focus on getting SSI benefits (*id*. at 492-95). *See Magallanes*, 881 F.2d at 755 ("As a reviewing court, we are not deprived of

our faculties for drawing specific and legitimate inferences from the ALJ's opinion."). Plaintiff's work and school activities are reasonably inconsistent with Plaintiff's allegations of anxiety around new people, difficulty understanding and following instructions, difficulty completing tasks, and difficulty handling stress. *See* AR at 29 (ALJ's summary of Plaintiff's alleged limitations). Thus, because the ALJ provided clear and convincing reasons to discount Plaintiff's allegations, the Court affirms the ALJ's assessment of Plaintiff's testimony.

### C. The ALJ Erred in Failing to Address the Statement of Plaintiff's Supervisor

Plaintiff argues that the ALJ erred in failing to address a June 2017 report written by Plaintiff's work supervisor, Hannah Moore. AR at 476-85. Ms. Moore indicated that Plaintiff's performance improved over time, but also detailed the functional limitations that Plaintiff experienced in his work as a part-time janitor. *Id*. at 476, 478-79.

The ALJ did not discuss Ms. Moore's statement. Although the Commissioner suggests that Ms. Moore's statement is not significant and probative (dkt. # 12 at 11), and thus did not need to be discussed explicitly, the Court disagrees, because Ms. Moore's statement mentions specific functional limitations that Plaintiff experienced in the workplace, and thus bears directly on the ALJ's evaluation of Plaintiff's workplace functioning. AR at 478-79. It may be, as the Commissioner argues (dkt. # 12 at 11), that there are valid reasons to discount the probative value Ms. Moore's statement, but the ALJ must make those findings in the first place. *See Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015). On remand, the ALJ should address Ms. Moore's statement and either credit it or provide legally sufficient reasons to discount it.

//

//

## V. CONCLUSION

For the foregoing reasons, the Commissioner's final decision is REVERSED and this case is REMANDED for further administrative proceedings under sentence four of 42 U.S.C. § 405(g). On remand, the ALJ should consider the statement written by Ms. Moore, and any other parts of the decision as necessary.

Dated this 9th day of April, 2020.

MICHELLE L. PETERSON
United States Magistrate Judge